FILED

MAY - 5 2005

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

ENTERED

MAY - 6 2005

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No.  RS 04-18812 MJ |
| DANIEL PAUL DEREBERY, JR. | Adv. No.  RS 04-2076 MJ |
| Debtor. | Chapter 7 |
| CARL BRANDSTETTER        Plaintiff. | MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| DANIEL PAUL DEREBERY, JR.        Defendant. | DATE:    March 24, 2005 |
| | TIME:    1:30 P.M. |
| | CTRM:    302 |

The plaintiff's motion for summary judgment came on regularly for hearing on March 24, 2004, in Courtroom 302 of the above-entitled court, the Honorable Meredith A. Jury, presiding, with Reid & Hellyer by Mark Schnitzer appearing on behalf of plaintiff/movant and Pagter & Miller by R. Gibson Pagter appearing on behalf of defendant/respondent/debtor. The matter was argued and submitted for further briefing. The court having read and considered the further briefs, and good cause appearing therefor, issues the following Memorandum of Decision, which shall serve as the Court's Findings of Fact and Conclusions of Law, to the extent necessary to

1

A-17

1    support a decision on a summary judgment motion.

2                                    I.

3                            INTRODUCTION

4         Plaintiff's motion for summary judgment, relying on the principles of issue preclusion,

5    seeks summary judgment against defendant/debtor Daniel Derebery based on a state court

6    judgment after a jury trial.  Plaintiff's argument rests on the jury's answer to a special verdict

7    question that supported an award of punitive damages: "Do you find by clear and convincing

8    evidence that the defendants acted with oppression or malice in the conduct on which you base

9    your finding of liability for nuisance?"  to which the jury answered: "Yes".  Plaintiff asserts that

10   this verdict answer renders plaintiff's judgment against Derebery non-dischargeable under the

11   provisions of 11 U.S.C. §523(a)(6).  In essence, plaintiff asks this court to find under issue

12   preclusion  that an award of punitive damages --based on a finding under California Civil Code

13   §3294 that a defendant acted with oppression or malice -- is sufficient for the debt to be  non-

14   dischargeable as one for "willful and malicious injury by debtor to another entity."

15        This court holds that under the principles enunciated in *In re Su*, 290 F3d 1140 (9th

16   Circuit 2002), as it clarified the holding in *In re Jercich,* 238 F3d 1202 (9th Circuit 2001), a jury

17   award of punitive damages based on action with oppression or malice is insufficient, standing

18   alone, to support non-dischargeability under 523(a)(6).

19                                   II.

20                         STATEMENT OF CASE[1]

21        On approximately February 15, 1996, plaintiff purchased property located at 32250 Circle

22   Terrace Drive ("property") at a tax sale.  At that time, Mary Stille ("Stille") was a tenant on the

23   property.  On May 1, 1997, plaintiff announced his ownership of the property to Stille and

24

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26        [1]  This summary of facts is taken from plaintiff's moving papers.  Defendent did not
     challenge this summary for the purpose of the summary judgment motion.

                                    2

Case 6:04-ap-02076-MJ    Doc 17-1    Filed 05/05/05    Entered 05/06/05 00:00:00    Desc
Main Document    Page 3 of 15

executed a new rental agreement with her. Defendant was the president of Holiday Retreats, Inc. ("Holiday"), the sole provider of water in the immediate locality of the property. Due to setback requirements and the position of the septic tank on the property, plaintiff could not dig his own well for the property. The only source of water for the property was the water source owned by Holiday. On approximately May 31, 1997, defendant discontinued the water service and capped the water pipe running to the property. As a result, Stille was forced to immediately move out, since there was no other water service available.

Holiday was the owner and controller of a water source supply identified in a contract entered into with the original owner of the water supply, Daniel Gerster ("Gerster contract"). The Gerster contract provided that the property would be supplied with water from Gerster's water supply for valuable consideration. Holiday was the successor to the Gerster contract as the owner of the water supply and therefore bound to supply water to the property. The Gerster contract, recorded November 20, 1925, created a license or profit to the benefit of the property in the water source now owned and controlled by Holiday. The Gerster contract created an easement of access to the water source, pertinent to the property.

Aggrieved by Holiday and defendant blocking access to the water source, on November, 2000, plaintiff filed, a complaint for declaratory relief, injunction, unfair business practices, breach of contract, and intentional interference with contractual relations ("complaint") in state court, Riverside Superior Court case no. RIC350482, against defendant and Holiday. After trial, on February 14, 2002, the Riverside Superior Court entered a judgment on jury verdict in favor of plaintiff for $200,000.00 against defendant ("judgment"). The judgment found that the defendant was liable for nuisance based on the jury's "yes" answer to special verdict Question No.7: "The defendant's act or failure to act, wrongfully interfered with the plaintiff's comfortable enjoyment of plaintiff's real property." The judgment also found, in the answer to the jury Question No. 9, that defendant acted with oppression or malice. The judgment held defendant and Holiday jointly and severally liable for the sum of $125,000.00 and awarded

1  punitive damages against defendant in the sum of $75,000.00.  Subsequent to entry of the

2  judgment, the court also awarded plaintiff $64,065.77 in attorney fees and costs.  Defendant's

3  appeal of the judgment was upheld by the Court of Appeals on October 21, 2003.

4  On July 8, 2004, defendant filed a petition under Chapter 7 of the Bankruptcy Code.

5  Plaintiff timely filed its adversary proceeding for non-dischargeability under 523(a)(6), leading to

6  this motion for summary judgment.

7  III.

8  PLAINTIFF ASSERTS ISSUE PRECLUSION AS GROUNDS FOR SUMMARY

9  JUDGMENT[2]

10  Issue preclusion bars re-litigation of an issue decided previously in a judicial or

11  administrative proceeding, provided that the party to whom the prior decision was rendered

12  enjoyed a full and fair opportunity to litigate the issues in the earlier proceeding.  See, *Allen v.*

13  *McCurry,* 449 U.S. 90, 96 (1980); *In re Elder,* 262 B.R. 799, 806(C.D. CA. 2001).  The

14  principles of issue preclusion apply in dischargeability proceedings in bankruptcy.  *Grogan v.*

15  *Garner,* 498 U.S. 279, 284 (1991); *In re Elder, supra* at 806.  In determining the preclusive effect

16  of a state court judgment, federal courts must, as a matter of full faith and credit, apply the forum

17  state's law of issue preclusion.  *In re Nourbakhsh,* 67 F3d 798, 800 (9th Circuit 1995; *In re*

18  *Bugna,* 33 F3d 1054, 1057 (9th Circuit 1994).

19  Under California law, the application of issue preclusion requires that the following

20  elements be met:

21  "(1) The issue sought to be precluded from re-litigation must be

22  identical to that decided in a former proceeding; (2) The issue must

23  have been actually litigated in the former proceeding; (3) It must

24  _____

25  [2] Plaintiff's brief uses the old style term *collateral estoppel* as the basis for its summary judgment
argument. Recent Ninth Circuit authority has discarded the terms *res judicata* and *collateral estoppel* and replaced
them with the more modern terms *claim preclusion* and *issue preclusion,* which are the terms this court will adopt in
26  issuing this Memorandum of Decision.

4

1    have been necessarily decided in the former proceeding; (4) The

2    decision in the former proceeding must be final and on the merits;

3    and (5) The party against whom preclusion is sought must be the

4    same as, or in privity with, the party to the former proceeding." *In*

5    *re Younie,* 211 B.R. 367, 373 (9th Circuit BAP 1997), affirmed, 163

6    F3d 609 (9th Cir. 1998).

7        The party seeking to apply issue preclusion has the burden of proving that each element is

8    satisfied. *In re Kelly*, 182 B.R, 255, 258 (9th Circuit BAP 1995).  To sustain this burden, a party

9    must introduce a record sufficient to reveal the controlling facts and the exact issues litigated in

10    the prior action.  Any reasonable doubt as to what was decided in the prior action will weigh

11    against applying issue preclusion. *Kelly, supra* at 258.

12        In the instant case, plaintiff argues that the jury's answer to the special verdict question

13    stated above meets all the elements of issue preclusion, asserting that the issue (§523(a)(6) non-

14    dischargeability) for this court to decide was identical to an issue in the jury trial in the state

15    court, that the issue was actually litigated and necessarily decided,  that the decision was final,

16    and that the defendant Derebery was the same party in the former proceeding.  The last four

17    criteria of the five part test are met in this case.  However, this court finds that the jury decision

18    that the defendant acted with oppression or malice is not identical to the issue required for

19    finding non-dischargeability under §523(a)(6),  that the debtor caused a willful and malicious

20    injury.

21                                   IV.

22    A CALIFORNIA JURY FINDING THAT THE DEFENDANT ACTED WITH OPPRESSION

23    OR MALICE IS NOT, ALONE, SUFFICIENT TO MEET THE STANDARD FOR NON-

24                    DISCHARGEABILITY UNDER §523(a)(6)

25        Section 523(a)(6) of the Bankruptcy Code provides:

26        "A discharge under Section 727, 1141, 1228(a), 1228(b), or

                                   5

1    1328(b) of this title does not discharge an individual debtor from

2    any debt. . . (6) for willful and malicious injury by the debtor to

3    another entity or to the property of another entity."

4    The party seeking to establish non-dischargeability of the debt shoulders the burden of

5    proof. *In re Hicks*, 184 B.R. 954, 959 (Bankr. C.D. Cal. 1995). The burden of proof required for

6    establishing an exception to discharge is a preponderance of evidence. *Grogan v. Garner, supra*.

7    at 686-87.

8    The United States Supreme Court recently clarified the scope of "willful and malicious

9    injury" in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). In that case, a patient sued her doctor for

10    malpractice and obtained a jury verdict of approximately $355,000.00 in damages. The doctor

11    subsequently filed for bankruptcy, and the patient challenged the dischargeability of the damage

12    award on the ground that under §523(a)(6), a debt incurred for "willful and malicious injury" by

13    the debtor cannot be discharged. The patient argued that the doctor "intentionally rendered

14    inadequate medical care" to her and that it "necessarily led to her injury." *Geiger*, supra, at 61.

15    The court, however, held that for a debt to be non-dischargeable, the party challenging the

16    discharge must demonstrate that the debt was the result of an act involving an intentional or

17    deliberate injury, not merely a reckless, deliberate, or intentional act that led to injury. *Geiger*,

18    supra, at 61. It is not enough that the act itself was intentional. Rather, the act must have been

19    carried out with the actual intent to cause injury. In reaching this conclusion, the court

20    specifically indicated that this standard corresponds to the traditional category of intentional

21    torts. *Geiger*, supra, at 61 (stating that "the (a)(6) formulation triggers in the lawyer's mind the

22    category 'intentional torts' as distinguished from negligent or reckless torts").

23    Subsequent to the Supreme Court's ruling in *Geiger*, two Ninth Circuit cases have

24    explicitly set the standard for non-dischargeability under §523(a)(6). In *In re Jercich*, 238 F3d

25    1202 (9th Circuit 2001) the court stated that the proponent of a §523 non-dischargeability action

26    must establish both that the debtor acted willfully and that the debtor acted maliciously. In so

6

1  holding, the court ruled that it is insufficient under §523(a)(6) to show that the debtor acted

2  willfully and that the injury was negligently or recklessly inflicted; instead, it must be shown not

3  only that the debtor acted willfully but also that the debtor inflicted the injury willfully and

4  maliciously rather than recklessly or negligently. *Jercich, supra*, The *Jercich* court went on to

5  say "In *Geiger*, the court did not answer the question before us today - the precise state of mind

6  required to satisfy §523(a)(6)'s 'willful' standard." *Jercich, supra*, at 1207.

7        The Ninth Circuit answered this question, but implied that its answer was consistent with

8  both Fifth and Sixth Circuit cases.[3] The Court defined the willful injury standard:

9              "We hold, consistent with the approaches taken by the Fifth and

10             Sixth Circuits, that under *Geiger*, the willful injury requirement of

11             §523(a)(6) is met when it is shown either that the debtor had a

12             subjective motive to inflict the injury or that the debtor believed

13             that injury was substantially certain to occur as a result of his

14             conduct." *Jercich, supra*, at 1208.

15  The *Jercich* court then analyzed the separate standard of maliciousness:

16             "A 'malicious' injury involves (1) a wrongful act, (2) done

17             intentionally, (3) which necessarily causes injury, and (4) is done

18             without just cause or excuse. ...Moreover, Jercich's deliberate and

19             willful failure to pay was found by the state trial court to constitute

20             substantial oppression under California Civil Code §3294, which

21             by definition is 'despicable conduct that subjects a person to cruel

22             and unjust hardship in conscience disregard of that person's rights.'

23             We hold that these state court findings are sufficient to show that

24             the injury inflicted by Jercich was malicious under §523(a)(6)."

25  _____

26  [3]*In re Markowitz* 190 F3d 455 (6th Circuit 1999) and *In re Miller* 156 F3d 598 (5th Circuit 1998).

7

1    *Jercich, supra,* at 1209.

2    *Jercich*, therefore, establishes that a state court finding of substantial oppression, one of

3    the grounds for punitive damages under California Civil Code § 3294, is sufficient for the

4    "malicious" element of §523(a)(6).  However, it does not establish the "willful" element.

5    The *Su* court clarified that the willful standard adopted in *Jercich* required a subjective

6    intent to cause injury, relying on Restatement (Second) of Torts, section 8A (1964).

7    "Both parties agreed that a 'deliberate or intentional injury' is

8    required for §523(a)(6) to render a debt non-dischargeable.  The

9    question we must decide is the state of mind that is required to

10    satisfy §523(a)(6)'s willful injury requirement.  According to the

11    Restatement, an action is intentional if an actor subjectively

12    'desires to cause consequences of his act, or ... believes that the

13    consequences are substantially certain to result from it.'

14    RESTATEMENT (SECOND) OF TORTS, §8A (1964).

15    . . .

16    The Sixth  Circuit's interpretation of §523(a)(6) exemplifies the

17    strict subjective approach, in which a debt is non-dischargeable

18    under §523(a)(6) only if the debtor intended to cause harm or knew

19    that harm was a substantially certain consequence of his or her

20    behavior

21    . . .

22    Conversely, the Fifth Circuit's interpretation of §523(a)(6)

23    exemplifies the objective approach, in which debt is non-

24    dischargeable under §523(a)(6) either if there is a subjective intent

25    to cause an injury or if there is an objective substantial certainty of

26    harm.

1          . . .

2          While this difference between the objective approach taken by the

3          Fifth Circuit and the subjective approach taken by the Sixth Circuit

4          is evident from *In re Miller* and *In re Markowitz*, this difference

5          has been overlooked by courts in the Ninth Circuit when evaluating

6          §523(a)(6) claims." *Su, supra*, at 1143-1144.

7      The *Su* court then held that to the extent the *Jercich* holding implied that either the

8  subjective test of the Sixth Circuit or the objective test of the Fifth Circuit was sufficient to meet

9  the standard, the Ninth Circuit test was the subjective intent to cause harm only, based on the

10 Restatement:

11         "We believe, further, that failure to adhere strictly to the limitation

12         expressly laid down by *In re Jercich* [subjective intent] will expand

13         the scope of non-dischargeable debt under §523(a)(6) far beyond

14         what Congress intended. By its very terms, the objective standard

15         disregards the particular debtor's state of mind and considers

16         whether an objective, reasonable person would have known that

17         the actions in question were substantially certain to injure the

18         creditor. In its application, this standard looks very much like the

19         'reckless disregard' standard used in negligence. (footnote omitted)

20         That the Bankruptcy Code's legislative history makes it clear that

21         Congress did not intend §523(a)(6)'s willful injury requirement to

22         be applied so as to render non-dischargeable any debt incurred by

23         reckless behavior (footnote omitted), reinforces application of the

24         subjective standard. The subjective standard correctly focuses on

25         the debtor's state of mind and precludes application of §523(a)(6)'s

26         non-dischargeability provision short of the debtor's actual

9

1    knowledge that harm to the creditor was substantially certain." *Su*,

2    *supra*, at 1145-1146.[4]

3    The Ninth Circuit in *Su* reaffirms that the willful inquiry is separate and apart from the

4    malicious inquiry and that both tests must be met.

5    In the instant case, the only jury finding which would support non-dischargeability under

6    the willful and malicious standard -- that defendant acted with oppression or malice -- was taken

7    from California Civil Code §3294, which defines those terms:

8    "(c) (1) 'Malice' means conduct which is intended by defendant to

9    cause injury to the plaintiff or despicable conduct which is carried

10    on by the defendant with a willful and conscience disregard of the

11    rights or safety of others.

12    (2) 'Oppression' means despicable conduct that subjects a person

13    to cruel and unjust hardship in conscience disregard of that

14    person's rights."

15    In answering that jury question "yes", the jury could have found any one of three things:

16    (1) Defendant's conduct was intended to cause injury to plaintiff;

17    or

18    (2) Defendant's conduct was despicable with a willful and

19    conscience disregard of the rights or safety of others; or

20    (3) Defendant's conduct was despicable and subjected a person to

21    cruel and unjust hardship in conscience disregard of that person's

22

23    _____

[4] Recklessness is defined in the Restatement as follows: "Recklessness may consist of either of two

24    different types of conduct. In one the actor knows, or has reason to know... of facts which create a high degree of
risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscience disregard of, or

25    indifference to, that risk. In the other, the actor has such knowledge, or reason to know, of the facts, but does not
realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. An

26    objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man
in his place would have, although he does not himself have it." Restatement (Second) of Torts, section 500 (1977).

10

1       rights.

2       The first of these three options meets the willful standard set by *Su* and *Jercich*. Neither

3  (2) or (3) meets the standard. Despicable conduct with a conscience disregard of the rights of

4  others was the type of reckless behavior specifically found insufficient in *Su* and the definition of

5  recklessness which *Su* quotes from the Restatement of Torts. Whether conduct is despicable is

6  determined by an objective standard as defined in California Jury Instructions, Civil, Book of

7  Approved Jury Instruction, 9th Ed., BAJI 14.72.1 as "Conduct which is so vile, base,

8  contemptible, miserable, wretched, or loathsome that it would be looked upon and despised by

9  ordinary decent people"- an objective standard." Consequently, neither the jury's second nor

10  third option met the subjective standard for willfulness required by *Su*. Therefore, neither of

11  them compelled non-dischargeability under §523(a)(6). Since this court is unable to know which

12  of the three the jury found, issue preclusion must fail.

13       Additionally, the underlying jury instructions in this case reflect that the type of conduct

14  referred to in jury question number 9 might have been a failure to act rather than an intentional

15  deliberate act as required by §523(a)(6). Jury question number 7, which dealt with nuisance,

16  read: "[D]id the defendant's act, or failure to act, wrongfully interfere with plaintiff's

17  comfortable enjoyment of plaintiff's real property?" This is the conduct referred to in question

18  number 9: "[D]o you find by clear and convincing evidence that the defendants acted with

19  oppression or malice *in the conduct on which you base your finding of liability for nuisance*?"

20  [emphasis added] Therefore, the jury's finding of oppression or malice may have been based on a

21  failure to act, not intentional harm at all. Inaction may not be the basis for a finding of non-

22  dischargeability based on willful conduct.

23       Plaintiff cites two cases which appear to be inconsistent with this court's interpretation of

24  willful and malicious. *In re Krishnamurthy*, 209 B.R. 714 (9th Circuit BAP 1997) specifically

25  concluded that punitive damages awarded under California law necessarily established that a jury

26  found oppression, fraud or malice, satisfying the §523(a)(6) standard. *Krishnamurthy* was

1  decided prior to *Geiger* and prior to the *Su* and *Jercich* two-pronged test for §523(a)(6). As a

2  result, it did not address the subjective test for willfulness and is not viable precedent for this

3  court's ruling.

4  　　　　The second case cited in the supplemental brief of plaintiff was an unpublished

5  disposition from the Ninth Circuit *In re Elder*, 40 Fed. Appx. 576 (9th Circuit 2002) which states

6  that the award of punitive damages under California law meant that "defendant's behavior was

7  found to be malicious or oppressive which further demonstrated that his actions were willful and

8  malicious under §523(a)(6)." Because this is an unpublished disposition and may not be cited to

9  any court under the Ninth Circuit rules, this bald statement is made without underlying analysis.

10  Moreover, *Elder* was affirmed by the Ninth Circuit on June 25, 2002, less than a month after the

11  May 20, 2002, filing of the *Su* decision. It is apparent that the *Elder* panel was unaware of the *Su*

12  published opinion.

13  　　　　Finally, plaintiff cites *Hangarter v. Provident Life and Accident Insurance Company*, 373

14  F3d 998 (9th Circuit 2004), a non-bankruptcy case, as support for its argument that the finding

15  necessary for punitive damages was sufficient to support §523(a)(6) non-dischargeability.

16  Contrary to plaintiff's arguments, this court finds that the language in *Hangarter* supports only

17  what must be found to award punitive damages under California law, insufficient to meet the

18  federal standard:

19  　　　　　　　　"Finally, California courts have held that punitive damages are

20  　　　　　　　　warranted where the cumulative evidence 'supports a finding of

21  　　　　　　　　intent to injure, since evidence establishing 'conscience disregard

22  　　　　　　　　of another's rights' is evidence indicating that the defendant was

23  　　　　　　　　aware of the probably consequences of his or her acts and willfully

24  　　　　　　　　and deliberately failed to avoid those consequences.' *Notrica v.*

25  　　　　　　　　*State Comp. Ins. Fund*, 70 Cal. App. 4th 911" *Hangarter, supra,* at

26  　　　　　　　　1013.

1   This quote shows the shortcoming.  Under California law it was sufficient to find a

2   conscience disregard of another's right and it would be sufficient to "fail to avoid" consequences,

3   neither of which meet the subjective test for willful intent to injure required by *In re Su.*

4   V.

5   OTHER REQUESTED RULINGS

6   Defendant has requested the court to rule on his evidentiary objections to portions of the

7   declaration of Carl Brandstetter filed in support of the summary judgment motion.  Because the

8   entire legal basis for the motion for summary judgment was issue preclusion based on the jury's

9   findings in the state court trial, the declaration of Carl Brandstetter in support of the motion for

10   summary judgment is largely irrelevant, except insofar as it laid the foundation for the state court

11   action and the documents filed therein.  Therefore, defendant's objections to the portions of the

12   declaration are sustained.

13   Defendant has also requested the court to award summary adjudication in its favor on the

14   issue of the dischargeability of Brandstetter's state court attorney's fees.  Lacking a separately

15   briefed summary adjudication motion by defendant on that issue, the court denies that relief and

16   makes no ruling on the dischargeability of the attorney's fees except to the extent that this denial

17   of plaintiff's motion for summary judgment equally denies attorney's fees as non-dischargeable

18   damages based on the underlying award being non-dischargeable.

19   Dated:   May 5, 2005

20

21   MEREDITH A. JURY
    United States Bankruptcy Judge

22

23

24

25

26

13

1              NOTICE OF ENTRY OF JUDGEMENT OR ORDER

2                  AND CERTIFICATE OF MAILING

3

4    TO ALL PARTIES IN INTEREST LISTED BELOW:

5

6    1.        You are hereby notified that a judgement or order entitled:

7    MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

8    was entered on _____MAY - 6 2005_____.

9

10   2.        I hereby certify that I mailed a true copy of the order or judgement to the persons and entities

11             listed below on ____MAY - 6 2005_____.

12

13

14

15   Dated:    MAY - 6 2005          _____

16                                              , Deputy Clerk

17   Office of the U.S. Trustee
     3685 Main Street Ste 300
18   Riverside, CA 92501

19   Chapter 7 Trustee
     Robert L. Goodrich
20   P.O. Box 266
     Riverside, CA 92502

21

     Mark C. Schnitzer
22   Reid & Hellyer
     3880 Lemon Street 5th Flr
23   P.O. Box 1300
     Riverside, CA 92502-1300

24

     R. Gibson Pagter, Jr.
25   Pagter & Miller
     1551 N. Tustin Avenue Ste 850
26   Santa Ana, CA 92705

27

1   Daniel Paul Derebery Jr.
    1573 Gary Lane
2   Redlands, CA 92374

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27